**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| David Meller and Kerstin Robinson, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) C.A. No.: 2:15-cv-2094-PMD ) ) |
| v. | ) **ORDER** ) |
| Wings Over Spartanburg, LLC; Wings Over America, Inc.; Aetius Companies, LLC; Aetius Franchising, LLC.; Aetius Holdings, LLC; Aetius Restaurant Holdings, LLC; and Aetius Restaurant Group, LLC, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 17), Plaintiffs' Motion for Conditional Certification (ECF No. 25), and Defendants' Motion to Strike (ECF Nos. 17, 25, & 39). For the reasons set forth herein, Defendants' Motion to Dismiss and Motion to Strike are granted in part and denied in part. Plaintiffs' Motion for Conditional Certification is denied without prejudice.

**BACKGROUND**

On May 21, 2015, Plaintiffs commenced this action on behalf of themselves and all others similarly situated, seeking unpaid minimum wages and unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiffs are former servers at Wings Over Spartanburg, LLC, and seek recovery from all Defendants, who own and operate a number of restaurants in the Southeast known as Wild Wing Cafe ("Wild Wing").

Plaintiffs primarily allege that Defendants used tip pools that violated the FLSA. Specifically, Plaintiffs assert that Defendants paid some of their employees an hourly wage lower than the statutory minimum wage using the FLSA's Tip Credit provision, 29 U.S.C. § 203(m). Plaintiffs further assert that while Defendants were paying less than the statutory minimum wage using the Tip Credit provision, they required servers to contribute a portion of their tips to Wild Wing's tip pools to compensate other employees. Finally, Plaintiffs allege that some of the employees who received money from the tip pools were non-tipped employees who did not qualify to share in the tip pools because they did not customarily and ordinarily receive tips. Because these non-tipped employees—the expeditors—did not customarily and ordinarily receive tips, as required by the Tip Credit provision, Plaintiffs allege that the tip pools they and the other potential class members shared with the expeditors violated the FLSA.

## PROCEDURAL HISTORY

Defendants filed their Motion to Dismiss on July 20, 2015. Plaintiffs responded on August 20, and Defendants replied on August 31. Plaintiffs filed their Motion for Conditional Certification on August 27. On September 14, the Court granted the parties' joint Motion to Stay Proceedings so that the parties could effectuate a proposed settlement. Upon learning that the case had not been settled, the Court lifted the stay on December 16. The Court gave Defendants until January 21, 2016 to respond to the Motion for Conditional Certification. Defendants responded on January 21, and Plaintiffs replied on February 1. Finally, Defendants filed their Motion to Strike on January 21, to which Plaintiffs responded on February 8. Defendants filed their Reply on February 19. These matters are now ripe for consideration.

*Defendants' Motion to Dismiss*

Defendants moved to dismiss several of Plaintiffs' claims on the grounds that they are preempted by the FLSA. In particular, Defendants assert that Plaintiffs' claims for violations of the South Carolina Payment of Wages Act ("SCPWA") and for unjust enrichment are preempted under an obstacle preemption theory.

## LEGAL STANDARD

A motion to dismiss pursuant Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court articulated a "two-pronged approach" to test the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the complaint must "contain factual allegations in addition to legal conclusions." *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012). Under Rule 8's pleading standard, "a formulaic recitation of the elements of a cause of action will not do," *id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted), and "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Second, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the complaint must demonstrate that the plaintiff's right to relief is more than a mere possibility, but it need not rise to the level of evincing a probability of success. *Id.* Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, the trial judge must accept as true all of the facts alleged in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiff. *E.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The court must determine whether the allegations give rise to a plausible right to relief, *Iqbal*, 556 U.S. at 679; however, it should "not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments,'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Thus, although the court must accept a plaintiff's well-pleaded factual allegations as true for purposes of ruling on the motion, the complaint must nevertheless satisfy the "two-pronged" test articulated by the Supreme Court. *Iqbal*, 556 U.S. at 679.

## ANALYSIS

Defendants claim that Plaintiffs' SCPWA and unjust enrichment claims are preempted by the FLSA under a theory of obstacle preemption. The Fourth Circuit uses an obstacle preemption analysis to determine whether the FLSA preempts state law claims, asking whether

those claims "'stand as an obstacle to the accomplishment of the full purposes and objectives of' the FLSA." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007) (quoting *Worm v. Am. Cyanamid Co.*, 970 F.2d 1301, 1305 (4th Cir. 1992)). In *Anderson*, the Fourth Circuit noted that "'the FLSA provides an unusually elaborate enforcement scheme . . . .'" *Id.* (quoting *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1999)). In particular, "the FLSA's enforcement scheme includes . . . the authorization for workers to file private actions, in state or federal court, to recover unpaid wages, liquidated damages, and costs and attorney's fees." *Id.* at 192. Nonetheless, Plaintiffs contend that their SCPWA and unjust enrichment claims seek remedies that are unavailable under the FLSA. In particular, Plaintiffs assert their right to "[a] disgorgement of revenues, profits and money unjustly earned from the unlawful practices; . . . [and r]estitution of wages and gratuities improperly retained by Defendant." (Pls.' Am. Compl., ECF No. 6, at 13.) Although their requested remedies are stated broadly in their Complaint, Plaintiffs have made clear in their subsequent filings that their SCPWA and unjust enrichment causes of action seek only recovery of tips in excess of minimum wage. In order to understand whether Plaintiffs' SCPWA and unjust enrichment claims stand as an obstacle to the accomplishment of the FLSA's purposes and objectives, a brief overview of those purposes and objectives is required.

"The FLSA is best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (quoting *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1266 (4th Cir. 1996)). "In enacting the FLSA, Congress intended 'to protect all covered workers from substandard wages and oppressive working hours.'" *Id.* (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). "'The substantive sections of the FLSA, narrowly focusing on minimum wage rates and maximum

working hours, bear out its limited purposes.'" *Id.* (quoting *Monahan*, 95 F.3d at 1267). "Section 216(b) provides a cause of action for violations of these two provisions, permitting employees to seek damages . . . in 'the amount of their unpaid minimum wages' and (in appropriate circumstances) an equal amount of liquidated damages." *Id.* (quoting 29 U.S.C. § 216(b)).

In *Trejo*, the Fourth Circuit confronted the question of whether the § 203(m) Tip Credit provision of the FLSA creates a free-standing right to bring a claim for lost tip wages where an employer was not relying on the Tip Credit provision to meet its minimum wage obligation under the FLSA. *Id.* at 446. In other words, the employees received the full minimum wage from their employer, in addition to earning tips from customers of the hotels and restaurants where they worked. *Id.* at 445. The Fourth Circuit found that, in such a situation, there is no free-standing right to bring a claim under the FLSA when the employer is not using the tips to meet its minimum wage obligation. *Id.* at 448. "The FLSA 'requires payment of minimum wages and overtime wages only,' and 'is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold.'" *Id.* (quoting *Nakhata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013)). Thus, "the 'statutory language' [in the FLSA] . . . 'simply does not contemplate a claim for wages other than minimum or overtime wages.'" *Id.* (quoting *Nakhata*, 723 F.3d at 201–02).

That language alone is sufficient for this Court to determine that Plaintiffs' SCPWA and unjust-enrichment claims are not preempted. Plaintiffs emphasize that those claims seek only recovery of the tips they earned in excess of their minimum wages. In this case, Defendants used the Tip Credit provision to meet their FLSA minimum wage obligations. Thus, *Trejo* suggests that Plaintiffs may bring a § 216(b) collective action to enforce their rights to unpaid minimum

wages. *See id.* at 446. However, as the Fourth Circuit also explained in *Trejo*, the FLSA's narrow scope is limited to enforcement of Plaintiffs' minimum wage and overtime rights. *Id.* In light of those limitations, Plaintiffs seek to recover only tips paid to expeditors in excess of minimum wage through their SCPWA and unjust enrichment causes of action. Because the FLSA does not permit a recovery beyond unpaid minimum and overtime wages, Plaintiffs assert that their only avenue for recovering such wages is through their SCPWA and unjust enrichment causes of action.

Plaintiffs state that for their SCPWA claim they "are neither invoking the minimum wage or overtime provisions of the FLSA." (Pls.' Resp. Opp'n Mot. Dismiss, ECF No. 24-1, at 11-12.) Instead, Plaintiffs focus on the language of the SCPWA and its definition of wages.[1] The SCPWA prohibits an employer from withholding any portion of any employee's wages unless permitted or required by state or federal law. *See* S.C. Code Ann. § 41-10-40(C). Plaintiffs claim they are entitled to receive compensation pursuant to the SCPWA for any monies they cannot recover under the FLSA. The Court concludes that Plaintiffs' SCPWA claim is not preempted because it does not duplicate the rights and relief available under the FLSA. To the contrary, Plaintiffs have deliberately shaped their SCPWA claim to not seek any wages they could recover under the FLSA. The district courts that have held that various common law and state statutory claims are preempted by the FLSA have all done so on the basis that those claims were duplicative of the rights and remedies available under the FLSA. *See Chaplin v. SSA Cooper, LLC*, No. 2:15-cv-1076-DCN, 2015 WL 2127610, at *2 (D.S.C. May 6, 2015) (holding that where "allegations are separate and distinct from those asserted under the FLSA claim, the . . . SCPWA claim is not preempted by the FLSA."); *McMurray v. LRJ Rests., Inc.*, No. 4:10-cv-

---

1.   At this stage, Defendants do not challenge that tips constitute wages under the SCPWA. Because that question is not before the Court, the Court expresses no opinion as to whether tips constitute wages under the SCPWA.

1435-JMC, 2011 WL 247906, at *2 (D.S.C. Jan. 26, 2011) (holding that claims for wages in excess of minimum wage are separate and distinct from FLSA claims and are therefore not preempted); *Nimmons v. RBC Ins. Holdings (USA) Inc.*, No. 6:07-cv-2637-GRA, 2007 WL 4571179, at *2 & n.1 (D.S.C. Dec. 27, 2007) (dismissing causes of action for breach of contract, wrongful termination, and wrongful retention of overtime pay, but preserving cause of action for vacation pay as not preempted by the FLSA). Because Plaintiffs have explicitly stated they will not pursue such duplicative relief under the SCPWA, this Court concludes that their SCPWA claim presents no obstacle to the FLSA's purposes and objectives and is therefore not preempted. As a result, Defendants' motion to dismiss Plaintiffs' SCPWA claim is denied.

As to Plaintiffs' unjust enrichment claim, the law is clear in the Fourth Circuit that state-law claims duplicating FLSA claims are preempted. *See Anderson*, 508 F.3d at 194 (agreeing with several district courts that deemed "state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims."); *cf. Nimmons*, 2007 WL 4571179, at *2 ("[T]he FLSA preempts all state-law causes of action premised upon failure to pay overtime . . . ."). In *Anderson*, the Fourth Circuit approvingly cited a district court's holding that the plaintiffs' unjust enrichment claim arose directly from their minimum wage and overtime claims under the FLSA and was therefore preempted. 508 F.3d at 194 (citing *Choimbol v. Fairfield Resorts, Inc.*, No. 2:05cv463, 2006 WL 2631791, at *6 (E.D. Va. Sept. 11, 2006)). Therefore, to the extent that Plaintiffs assert unjust enrichment to recover unpaid minimum and overtime wages, that claim is preempted and Defendants' motion is granted. However, for the same reasons discussed above with respect to Plaintiffs' SCPWA claim, Defendants' motion to dismiss is denied as to Plaintiffs' unjust enrichment claim to the extent that claim seeks tips paid to expeditors in excess of the minimum wage requirements.

*Plaintiffs' Motion for Conditional Certification*

## **LEGAL STANDARD**

Under the FLSA, employees may institute a collective action against their employer on behalf of themselves and similarly situated employees. The FLSA's collective action provision states that:

> [a]n action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The mechanism outlined in § 216(b) is designed to facilitate the efficient adjudication of similar claims by "similarly situated" employees, permitting the consolidation of individual claims and the pooling of resources in prosecuting such actions against their employers. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 467 (E.D. Va. 2014), *reconsideration denied*, 2014 WL 2121563 (E.D. Va. May 20, 2014), *and motion to certify appeal denied*, 2014 WL 2121721 (E.D. Va. May 20, 2014); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). In deciding whether the named plaintiffs in an FLSA action are "similarly situated" to other potential plaintiffs, courts generally employ a two-stage approach.[2] *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)); *see also Regan v. City of*

---

2.  Although the Fourth Circuit has not yet enunciated a test for conditional certification of collective actions, district courts in the Fourth Circuit, including this Court, typically follow the two-stage, or two-step, approach when deciding whether named plaintiffs are similarly situated to potential plaintiffs. *E.g.*, *LaFleur*, 30 F. Supp. 3d at 467 ("District courts within . . . the Fourth Circuit . . . have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA . . . ."); *Curtis v. Time Warner Entm't*, No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *2 (D.S.C. May 3, 2013) ("Although the Fourth Circuit has not directly addressed the appropriate standard for certifying a collective action under § 216(b), district courts in this circuit, including this court, follow the [two-stage] process . . . .").

*Charleston*, No. 2:13-cv-03046-PMD, 2014 WL 3530135, at *2 (D.S.C. July 16, 2014); *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367 (D.S.C. 2012); *Simons v. Pryor's, Inc.*, No. 3:11-cv-0792-CMC, 2011 WL 6012484, at *1 (D.S.C. Nov. 30, 2011); *MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-03088-DCN, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011).

The first step in this process, which is the subject of the instant Motion, is the "notice," or "conditional certification," stage. *Purdham*, 629 F. Supp. 2d at 547. Here, "a plaintiff seeks conditional certification by the district court in order to provide notice to similarly situated plaintiffs" so that they can "opt-in" to the collective action. *Pelczynski*, 284 F.R.D. at 367–68. With regard to this notice phase, "[t]he Supreme Court has held that, in order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion[,] in appropriate cases[,] to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" *Purdham*, 629 F. Supp. 2d at 547 (quoting *Hoffman-La Roche, Inc.*, 493 U.S. at 169). At this stage, the court reviews the pleadings and affidavits to determine whether the plaintiff has carried his burden of showing that he is similarly situated to the other putative class members. *Pelczynski*, 284 F.R.D. at 368; *Purdham*, 629 F. Supp. 2d at 547–48. "Because the court has minimal evidence, this determination is made using a fairly lenient standard." *Steinberg v. TQ Logistics, Inc.*, No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011). Plaintiffs must make only "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," *Purdham*, 629 F. Supp. 2d at 548. If the court determines that the proposed class members are similarly situated, the court conditionally certifies the class. *Steinberg*, 2011 WL 1335191, at *1. The putative class members are then notified and afforded the opportunity to "opt-in," and the

case proceeds as a representative action throughout discovery. *Id.* (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (citation omitted) ("'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (citing § 216(b))).

Second, after the court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, "a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief." *Pelczynski*, 284 F.R.D. at 368. At this optional "decertification stage," the court applies a heightened fact-specific standard to the "similarly situated" analysis. *Steinberg*, 2011 WL 1335191, at *2; *see Pelczynski*, 284 F.R.D. at 368. "Courts have identified a number of factors to consider at this stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis*, 2013 WL 1874848, at *3 (internal quotation marks omitted). If the court determines that the plaintiffs are not, in fact, similarly situated, it may decertify the class, dismiss the opt-in plaintiffs' claims without prejudice, and permit the named plaintiffs to proceed on their individual claims. *Id.*

## ANALYSIS

Plaintiffs request that this Court enter an order: (1) conditionally certifying a class of individual restaurant employees ("Proposed Class"), as detailed further herein; (2) requiring Defendants to produce the names, last known addresses, and telephone numbers of putative class members in an electronic format within twenty days; (3) authorizing Plaintiffs' counsel to contact and send notices to putative class members; and (4) approving Plaintiffs' proposed class-member notification and consent forms. The Court will address each request in turn, along with Defendants' objections thereto.

### I.   Conditional Certification

Plaintiffs move to conditionally certify the following Proposed Class:

> All current and former Servers employed by the Defendants after May 21, 2012[,] who were not paid minimum wage for all hours worked and who worked overtime hours but were not paid proper overtime wages during all or part of their employment.

(Pl's. Mem. Supp. Mot. Conditional Class Certification, ECF No. 25-1, at 1.)

Defendants object to the breadth of the Proposed Class, stating that the class should be limited to servers from the Spartanburg Wild Wing restaurant, and not include all servers in all Wild Wing restaurants. As discussed further herein, the Court agrees that the class should be narrowed, but not to the extent requested by Defendants.

The Court notes that Plaintiffs offer only three affidavits in support of their request for such a broad Proposed Class. First, they offer the affidavits of the named plaintiffs, David Meller and Kerstin Robinson. Both Meller and Robinson worked at the Spartanburg Wild Wing and do not include anything in their affidavits about other Wild Wing locations. Next, Plaintiffs

offer the affidavit[3] of Amanda Rice, who worked as a server at Wild Wing locations in Greenville, Charleston, and Asheville over a period from 2005-2011. Defendants have filed a motion to strike Ms. Rice's affidavit, and Plaintiffs responded by submitting a substantially identical declaration from Ms. Rice. The Court will permit Ms. Rice's declaration to replace her defective affidavit. However, as Defendants point out in their motion to strike, Ms. Rice was not employed by Wild Wing during the relevant time frame. Defendants assert that they made changes to their policies in 2012, a year after Ms. Rice left in 2011. Although Plaintiffs urge the Court to consider Ms. Rice's affidavit as circumstantial evidence of a common scheme or plan throughout all Wild Wing restaurants, even during the relevant period from 2012 until 2015,[4] the reality is that Plaintiffs have not produced any evidence demonstrating improper tip-outs occurred anywhere other than the Spartanburg Wild Wing restaurant from 2012 until 2015.

Nonetheless, as Plaintiffs discuss in their reply, the affidavits filed by Defendants in their response in opposition demonstrate that the allegedly improper tip-outs to expeditors were not confined to the Spartanburg location. Based on Defendants' affidavits, the Mount Pleasant, Vista, Columbiana, Greenville, Hilton Head, and downtown Charleston locations all permitted the expeditors to receive tips from the servers for various lengths of time. While the Court expresses no opinion at this stage as to whether the tip-outs to expeditors were legally permissible, there is sufficient evidence in the record for the Court to certify a class including the locations discussed above. Additionally, in light of the evidence before the Court that a substantial number of both corporate and franchise Wild Wing restaurants permitted expeditors

---

3.  Ms. Rice's "affidavit" is defective. It was signed electronically and was never notarized. Additionally, it did not meet the requirements of an unsworn declaration because it did not include the date on which it was executed or any extrinsic evidence to prove the date on which it was executed. *See* 28 U.S.C. § 1746.

4.  The Court use of a three-year time period is not meant to express any opinion as to whether or not Defendants' alleged violations were willful.

to receive tips from servers, the Court will allow the parties twenty-one days to do limited additional discovery to determine whether the other corporate-owned and franchise Wild Wing restaurants engaged in similar practices.  Because conditional certification is meant to result in increased efficiency, the Court is reluctant to conditionally certify a class in various pieces.  Accordingly, Plaintiffs' Motion for Conditional Certification is denied without prejudice until such time as the parties conduct their twenty-one days of limited discovery on the question of whether expeditors received tips from servers in any Wild Wing restaurant, corporate owned or franchise, during the period from January 1, 2012, until now.  Once Plaintiffs have re-filed their motion, the Court will address the parties' requests as to the proposed notice and consent forms.

### *Motion to Strike Affidavit of Amanda Rice and Gross Receipts of Servers*

Finally, the Court turns to Defendants' motion to strike.  Defendants request that the Court exclude Ms. Rice's affidavit, along with the declaration she executed as a replacement.  As noted above, the Court will permit Ms. Rice's declaration to replace her invalid affidavit.  *See* 28 U.S.C. § 1746 (stating that unsworn declarations meet the affidavit requirements if signed under the penalty of perjury); *see also Williams v. Sielaff*, 914 F.2d 250 (4th Cir. 1990) (table) (same); *Taylor v. Urch*, No. 2:12-cv-1293-JMC, 2013 WL 4041956, at *5 n.2 (D.S.C. Aug. 8, 2013) (same).  Although Ms. Rice's affidavit failed to meet the requirements established in the Federal Rules of Civil Procedure, her substituted declaration complies with those rules.  Accordingly, Defendants' motion is granted as to Ms. Rice's affidavit, but denied as to her declaration.

Next, Defendants ask the Court to strike the receipts submitted by Plaintiffs in support of their motion for conditional certification.  The Court denies Defendants' request.  The Court notes that it did not and need not consider the receipts in order to reach the results discussed above.  Nonetheless, the Court concludes that the receipts have been properly authenticated by

way of Mr. Meller's and Ms. Robinson's affidavits. *See* Fed. R. Evid. 901(b)(1) (stating that "[t]estimony that an item is what it is claimed to be" is sufficient to satisfy the authentication requirement). Any question of how Plaintiffs obtained those receipts goes towards credibility, which the Court may not weigh at this juncture. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 571 (D. Md. 2012) ("credibility determinations are usually inappropriate for the question of conditional certification") (internal quotation marks and citation omitted). Accordingly, Defendants' motion to strike is granted in part and denied in part.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, that Plaintiff's Motion for Conditional Certification is **DENIED WITHOUT PREJUDICE**, and that Defendants' Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**March 21, 2016**
**Charleston, South Carolina**